## KELLY-SPRINGFIELD TIRE COMPANY ET AL. *v.* DANIELS

[No. 75, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Thomas G. Andrew*, with whom was *Walter R. Tabler, Jr.* on the brief, for the appellants.

No brief and no appearance for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is a proceeding under the Workmen's Compensation Act, Code Supp. 1947, art. 101, sec. 1 *et. seq.,* brought by Louis E. Daniels, age 49, to recover compensation for an injury which he sustained on March 17, 1950, while working at the plant of the Kelly-Springfield Tire Company in Cumberland.

Claimant was lifting an air bag and putting it on the hook of the machine for bagging tires. The base of the machine was about one foot above the floor, and in order to attach the bag to the hook it was necessary to stoop and reach between two discs under the machine. While claimant was stooping, he felt sharp pain, "just like a knife," in the lower part of his back. He straightened up and tried to lift another bag, and the pain returned. At the hearing before the State Industrial Accident Commission he testified: "I went to First Aid and they taped me, and I came back, and they put me on light duty, where I could sit down. I worked at that for an hour or so and the pain got so great I couldn't stand it, and I went home."

Claimant returned to work at the tire plant on May 22, but he had to stop again on June 14. Finally he consulted Dr. Wylie M. Faw, Jr., a Cumberland surgeon. Dr. Faw diagnosed his disability as instability of the lumbar-sacral spine with prolapsed intervertebral disc between the fifth lumbar and first sacral vertebrae, with pressure on the left first sacral nerve. On July 6 claimant entered a hospital and underwent an operation on the left lamina of the fourth and fifth lumbar vertebrae. As the prolapsed disc was causing pressure on the fifth lumbar and first sacral nerves, the lamina was removed to relieve the pressure. Claimant was discharged from the hospital on July 19. Although he was weak and nervous and still wearing a brace, he returned to work on September 5.

On September 27, 1950, the Industrial Accident Commission, deciding that claimant had sustained an accidental injury, awarded him compensation for temporary total disability at the rate of $28 per week, beginning March 21, 1950, and ending September 4, 1950, subject to a credit for the days on which he worked and earned wages. It also ordered the employer and Liberty Mutual Insurance Company, its insurer, to pay the medical expenses incurred as a result of the injury. The employer and the insurer appealed from the award to the Circuit Court for Allegany County. The case was submitted to the Court without a jury. From the order of the Court affirming the award, the employer and the insurer appealed here.

In several States the Workmen's Compensation Act provides for compensation for injuries without qualifying them as accidental. Under these Acts compensability depends upon the question whether the injury arose out of and in the course of the employment. The Maryland Act, like the Acts in nearly all other States, provides for compensation for disability or death of an employee resulting from "an accidental personal injury sustained by the employee arising out of and in the course of his employment." Code Supp. 1947, art. 101, sec. 14. The Act defines the term "accidental personal injury" as including only "injuries arising out of and in the course of employment and such occupational disease or infection as may naturally result therefrom * * *." Code Supp. 1947, art. 101, sec. 67, as amended by Laws 1951, ch. 289.

It has been held by the great weight of authority that sudden and unexpected rupture of some portion of the internal structure of the body, as cerebral hemorrhage or apoplexy, or the failure of some essential function of the body, as heart failure or paralysis, brought about by the exertion of the employee while engaged in the performance of his duties, or by the conditions of the employment, even without any external happening of an accidental nature, is an accidental injury. *Gray's*

*Hatchery & Poultry Farms v. Stevens,* Del. Super., 81 A. 2d 322; 58 Am. Jur., Workmen's Compensation, sec. 255; 5 Schneider, Workmen's Compensation, Perm. Ed., sec. 1446.

Thus it has been specifically held by the Supreme Court of Vermont that an injury sustained by an employee while doing lifting of an ordinary character in an ordinary manner is an accidental injury within the purview of the Workmen's Compensation Act. *Giguere v. E. B. & A. C. Whiting Co.,* 107 Vt. 151, 177 A. 313, 98 A. L. R. 196.

Likewise it has been held in Rhode Island in *Chirico v. Kappler,* 61 R. I. 128, 200 A. 447, that an employee who received a lumbar-sacral strain while lifting a heavy stone into a truck sustained a personal injury by accident entitling him to compensation. Explaining that the Workmen's Compensation Act is a remedial statute which should be liberally construed, the Court ruled that where causal connection is shown between the employment and an unexpected mishap to the employee in the course of his employment, injury resulting from the mishap is an accident within the contemplation of the Act.

It has similarly been held in New Jersey that any injury resulting from strain of an employee incident to his work, whether usual or unusual, constitutes a compensable accident. *Ciocca v. National Sugar Refining Co.,* 124 N. J. L. 329, 12 A. 2d 130, 132; *Cavanaugh v. Murphy Varnish Co.,* 130 N. J. L. 107, 31 A. 2d 759, Id., 131 N. J. L. 163, 35 A. 2d 896. In *Neylon v. Ford Motor Co.,* 13 N. J. Super. 56, 80 A. 2d 235, where the employee suffered a sacroiliac strain while unloading seat frames weighing between 10 and 30 pounds from a freight car, the Court held that he could not be denied compensation merely because the exertion which caused the injury was not unusual

In Pennsylvania it has been said that a compensable injury of an employee may occur in the course of his normal duties, even in the absence of over-exertion, where the strain upon the employee causes a break or sudden

change in the physical structure or tissues of his body. In *Gavula v. Sims Co.,* 155 Pa. Super. 206, 38 A. 2d 482, compensation was allowed to an electric welder who suffered a rupture of an intervertebral disc caused by the strain from his unusual stooping and balancing posture due to his unaccustomed use of a stool on top of a table, instead of a plank scaffold on which he could recline while working.

This broad rule, which has been adopted quite generally in the United States following the decisions in England, has not been fully accepted in Maryland. In this State the sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is held to be accidental injury only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment. *Victor Sparkler & Specialty Co. v. Francks,* 147 Md. 368, 128 A. 635, 44 A. L. R. 363; *Schemmel v. T. B. Gatch & Sons Contracting & Bldg. Co.,* 164 Md. 671, 166 A. 39; *Standard Gas Equipment Corporation v. Baldwin,* 152 Md. 321, 136 A. 644; *J. Norman Geipe, Inc., v. Collett,* 172 Md. 165, 190 A. 836, 190 A. L. R. 887; *Union Mining Co. v. Blank,* 181 Md. 62, 28 A. 2d 568; *Baltimore & Ohio R. Co. v. Zapf,* 192 Md. 403, 64 A. 2d 139, 6 A. L. R. 2d 400.

A striking illustration of the Maryland rule is afforded by the opinion of this Court written by Judge Shehan in *Heil v. Linck,* 170 Md. 640, 185 A. 555. In that case two employees of a meat dealer had been carrying quarters of beef, weighing between 130 and 160 pounds, to the cutting-block in the cooling room. One of the men, suffering a heart attack, dropped dead. The issue in the case was whether the deceased had been subjected to any unusual strain or any unusual condition in the employment. Judge Offutt, in dissenting, urged that, in addition to the fact that the deceased had been suffering from a heart disease, there were three other factors which contributed to his death: (1) the unusual heat of a hot August day; (2) the shock in passing from the

high temperature outside into the freezing temperature of the cooling room; and (3) excessive physical exertion in the freezing temperature. But the Court held that the employee's work in the cooling room was a part of his regular employment, that he was not exposed to unusual temperature, and that he was not in contact with any unusual condition, and therefore the injury was not accidental.

In *Jackson v. Ferree*, 173 Md. 400, 196 A. 107, where the employee was seized with a pain while putting a wheel on an axle of a truck, and that night noticed a lump on his stomach, the Court held that he did not sustain an accidental injury, as he was not subjected to any unusual strain and was jarred very slightly. On the other hand, in *Baltimore & Ohio R. Co. v. Zapf*, 192 Md. 403, 64 A. 2d 139, 6 A. L. R. 2d 400, where the employee in a steel rolling mill was jarred considerably by a steel axle when it accidentally struck an object, we held that the evidence was sufficient to submit to the jury the question whether the injury was accidental.

In considering whether claimant's injury in this case was accidental, the decisive test is whether it was caused by any unusual strain or exertion or any unusual condition in his employment. The record shows that claimant suffered a ruptured intervertebral disc while lifting an air bag weighing nearly 100 pounds. It was not unusually heavy. Claimant called it a "comparatively heavy bag." Nor did he lift the entire bag, but merely one side of it to get it on the hook so that it would be thrown through the cylinder of the bagger. He estimated that the weight he was lifting was only about 40 pounds. It appears that he was stricken with pain while performing his customary duties in the customary manner. He had been performing this kind of labor for about five months. During that entire time he had been lifting heavy bags many times every day.

Claimant also admitted that he did not fall or slip, and that nothing fell upon him or struck him. At the hearing before the Commission he was specifically asked

whether he had slipped or noticed any twist while he was picking up the bag. He replied: "I didn't notice anything different from that of any of the rest." When he was asked whether he remembered anything unusual happening to him at the time he felt the pain, he answered: "I don't recall a thing. * * * Nothing, only the pain."

In view of the rule which has been followed in Maryland, we are constrained to hold that claimant did not sustain an accidental injury. We must, therefore, reverse the order of the Court below and remand the case for the passage of an order reversing the award of the Commission.

*Order reversed and case remanded, with costs.*